MELVIN R. ROSS v. COMM'RS OF CRAWFORD COUNTY.

1. CORRECTING ASSESSMENTS; *Compulsory Proceedings before County Clerk.* In proceedings to correct an assessment under §§ 65, 66 and 67 of the tax law of 1868, the clerk is required to file in his office a statement of the facts or the evidence upon which he makes the correction. Where he filed a statement of the evidence, and the order is supported by the evidence, although he voluntarily and without any demand adds to his statement of the evidence something in the nature of a finding of facts, it is not a ground for setting aside his order that this finding of facts is not sufficiently precise and complete of itself alone to sustain the order.

2. TRIAL BY JURY, *When Not a Matter of Right.* That in proceedings which are merely proceedings to correct assessments there is no provision for a trial by jury, does not render them void, or make them in conflict with § 5 of the Bill of Rights which provides that "the right of trial by jury shall be inviolate."

*Error from Crawford District Court.*

PROCEEDINGS to discover taxable property which the owner refused to list. The record of such proceedings is as follows:

COUNTY CLERK'S OFFICE, GIRARD, July 18th, 1874. On this 18th of July personally appeared before me at my office in Girard, Crawford county, R. E. Carlton, township trustee, and informed me that one Melvin R. Ross of Baker township in said county of Crawford, did not list the true amount of his personal property, and that he believes that he has about fifty hogs, whereas he the said Ross only listed three; also, he believes he has a large amount of money, notes and mortgages that he has not given in to him the said Carlton as assessor of said township of Baker. Said Carlton also named certain citizens of said township as competent witnesses to prove said allegations and information. Thereupon, I, as county clerk aforesaid, set Monday July 27th 1874 as the hour for hearing the testimony in regard to the matter, and gave the said Melvin R. Ross due notice as required by the statute.

*Monday, July 27th, 1874:* Parties appeared pursuant to notice, Melvin R. Ross in his own proper person, as well as

by his counsel, Daniel Scott, Esq. The county was represented by J. T. Bridgens, for the county attorney. * * * The following witnesses were duly sworn and examined, on behalf of the county: R. E. Carlton, A. Adams, E. R. Clark, Wm. Callwell, E. Stillwell, John Harrison, Thomas Bates, P. F. Holden, J. Cheney, and Jesse Timmerman; and on behalf of said Ross, the following — M. Schultz and E. Keeler. After hearing the testimony of the witnesses, and arguments of counsel, I do find the information as alleged to be true, and do further find that said Melvin R. Ross had in his possession on the 1st day of March 1874, which he refused to list to the said R. E. Carlton, assessor of said township of Baker, the following personal property, to-wit: 3 horses, 27 hogs, 4 head of cattle; notes, $1,000; notes secured by mortgage, $1,210.

It is therefore considered by me, that said personal property above described should and of right be assessed against him the said Melvin R. Ross, and that he pay the costs and expenses of this examination taxed at $77.15. [Then follows an itemized statement of the costs.]

J. H. WATERMAN, *County Clerk.*

The transcript also contains "a synopsis of evidence taken down [on said examination] by Geo. W. Tipton, appointed for the purpose of writing down the testimony in the case of Melvin R. Ross." *Ross*, feeling aggrieved by the order and decision of the county clerk, removed said proceedings and decision to the district court by petition in error, where the action was docketed as "*Melvin R. Ross,* plaintiff in error, against *The Board of County Commissioners of Crawford County*, defendant in error." Said petition in error was heard at the January Term 1875 of the district court, and said court affirmed the decision and order of the county clerk. *Ross* now brings the case here on error.

*R. E. Burns,* and *Blair & Hill*, for plaintiff in error:

This case originated under §§ 65, 66 and 67, of the tax law, and plaintiff submits the following legal propositions to this court for its consideration and opinion: 1st, Are the findings in this case supported by evidence? 2d, Are the findings supported by law? 3d, Is the act conferring judicial powers

on the county clerk not in conflict with §§ 1 and 11 of article 3 of the constitution? 4th, Is not the whole act in conflict with § 5 of the bill of rights?

1. The court finds that Ross had in his possession on the 1st day of March 1874, which he refused to list, certain personal property. This finding calls for an examination of the evidence, which the clerk returns as the evidence upon which he based his finding; and as the law requires him to preserve the evidence, his findings must stand or fall upon that evidence. Now, as to the horses, hogs, and cattle, all the witnesses testify that they know merely from hearsay, and from seeing the property on the premises of Ross. Ross admits that part of this property was on his place, but that it belonged to others, and there is nothing to show but that the proper parties listed that property, nor that the county ever lost one cent, and certainly nothing with which to support the findings. As to the $1,000 in notes: Where is there any evidence to support the theory that those notes, or any part of them, had any value whatever? Certainly none. Then, if they had no value, or if they were not good, certainly Ross was not compelled to pay taxes on them. As to the $1,210 secured by mortgage: Take first, the Runnick mortgage. Mr. Ross and Mr. Stillwell are the only two persons testifying on the subject, and neither testifies that Ross had that mortgage on the first day of March, consequently we suppose there will be no dispute among legal gentlemen on that point. The next is the Richards mortgage, and the sum total of Richards' evidence is, that he gave to Ross a mortgage previous to the 1st of March 1874, for the sum of $260, but he don't state one fact to support his conclusion that Ross held or owned that mortgage on March 1st. The next is the Wallace mortgage, for $1,000, and the evidence clearly shows that $700 of that was paid long before March 1st, leaving a balance of $300. The next and last is what is known as the Pearce mortgage; and this, we contend, was not taxable property in the hands of Ross. The evidence is clear and explicit, without contradiction, that Ross held no property in

that mortgage, but that he only took said mortgage as the agent of a third person.

Again, where is the evidence showing what property, or how much was given in by Ross to the assessor? The list as made out and delivered to the assessor should have been introduced by the county, in order that the clerk should · have taken official notice of the actual amount of property. No court can say that Ross did or did not list all of his money, notes and mortgages. 6 Kas. 403.

2. Is the finding sustained by law? The county clerk has failed to find the only facts which the law required him to find, viz.: 1st, the value of the property; 2d, that the property was in Crawford county on the first day of March; 3d, that the property belonged to Melvin R. Ross; 4th, that Ross willfully and fraudulently failed to list said property, in order to compel him to pay costs. But what kind of mortgages were these? If they were mortgages on personal property, he could properly deduct from his indebtedness. This court cannot tell but what these mortgages were chattel mortgages; and if so, if he owed an amount sufficient to cover them, they would not be taxable.

3. What does the constitution mean when it says, "All judicial officers shall be appointed by the governor?" Is this a judicial proceeding? What is the nature of this proceeding, if not judicial? Does not the tax act confer upon the county clerk all the duties and powers of a court? If so, is it not clearly in conflict with §§ 1 and 11 of art. 3 of the constitution?

4. In all cases in which at common law a jury trial was allowed, the same so remains, provided that no tribunal had jurisdiction of some especial offense or matter before the adoption of the constitution. (Bill of Rights, §§ 5, 10.) Is this one of those cases in which a jury trial was allowed at common law? Now, while it may be a case unknown to common law, we find a safe criterion for a guide. A jury trial is allowed and guarantied by the constitution in all cases *quasi criminal* in their nature, depending upon a plea of not guilty

for an issue. And this case does not come within the rule laid down in New York, viz., in cases where the tribunal trying the cause has not the power to call a jury, if there is an appeal to a court having a jury the act will not be deemed unconstitutional. As the act of the legislature is special, and must be followed, the clerk has no power to call a jury, nor to grant an appeal. Nor is this case within the rule laid down by some other states, viz., that when the act was special, and granted to a special tribunal, before the adoption of the constitution, the act will not be declared unconstitutional. This is an act found the first time in the statutes of Kentucky, and in that state the supreme court held the act unconstitutional. It is not found in the statutes of any other state or territory, so far as we have been able to investigate. The presumption of the law is that Ross did his duty. He listed his property, and swore to the listing. Now the issue is, that he *wrongfully* refused to list all his taxable property; and in this case we apprehend that he is entitled to a jury trial. *The State v. Allen*, 5 Kas. 213; *Work v. The State*, 2 Ohio St. 296; *Green v. Briggs*, 1 Curtis, 311; *Carson v. Commonwealth*, 1 A. K. Marsh. 290; *Hughs v. Hughs*, 4 Monroe, 43; 2 McCord, 55; 1 Howard, (Miss.) 102.

*D. S. McIntosh*, and *Daniel Scott*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: The proceedings in this case were had under §§ 65, 66 and 67 of the Tax Law, (Gen. Stat., page 1041.) Ross was cited to appear before the county clerk for failing to return all his personal property for assessment. He appeared, an inquiry was had, testimony heard, and the county clerk found that he had omitted from his return considerable property, and ordered that it be corrected. The case was taken on error to the district court, which affirmed the decision of the county clerk, and it comes to us on error from the district court.

Several objections are made to the record. It is claimed

that the evidence does not support the findings of the clerk. It is unnecessary to say more than that after examining the evidence, we are satisfied that there is enough to support both the findings and the order made by the clerk. Again, it is said that the findings do not support the order. The findings are—

"That the information as alleged is true, and that Melvin Ross had in his possession, on the 1st day of March 1874, which he refused to list to the said R. E. Carlton, assessor of said township of Baker, the following personal property, to-wit: three horses, twenty-seven hogs, four head of cattle, notes $1,000, and notes secured by mortgage $1,210."

The objections are, that he failed to find, "First, the value of the property; second, that the property was in Crawford county on the first day of March; third, that the property belonged to Melvin R. Ross; fourth, that Ross willfully and fraudulently failed to list said property—in order to compel him to pay costs." The order made by the county clerk was as follows:

"It is therefore considered by me, that said personal property above described should and of right be assessed against him, the said Melvin R. Ross, and that he pay the costs and expenses of this examination."

The record stops with this order, and shows no further proceedings. Whether the county clerk himself valued this property, or referred the matter back to the assessor, and indeed whether the personal assessment of Mr. Ross has actually been raised a single dollar, are matters not appearing in this record. Perhaps if raised at all, it was only raised to the amount of the notes, whose face is *prima facie* their value. At any rate, until we are informed as to the actual increase in the amount of the assessment, we cannot say that there was error in failing to place a value upon any specific property.

In reference to the site and ownership of this property, it may be said that we may not expect the same precision in these proceedings as in those of courts, at least those of superior jurisdiction. The information given to the clerk

was that Mr. Ross "did not list the true amount of his personal property." He finds this information to be true. Now what is fairly implied by this information — that he had failed to list *all his personal property?* or, that he had failed to list *all that he ought to have listed* — the true amount subject to assessment? This last seems a reasonable construction; and when the clerk finds the information to be true, he finds that Ross failed to list all his property subject to assessment, and then specifies the omitted property.

In reference to the costs, the statute provides that if the party makes "a false statement of the amount of property for taxation, to evade the payment of taxes," he shall pay all the costs and expenses of these proceedings. Where there is no intention to evade the payment of taxes the county pays the costs; (§ 66.) The county clerk charges the costs upon Ross. He finds that he "refused" to list this property. Such a refusal, it is true, may be consistent with an honest belief that the property was not taxable, and may not have been made with the intention of evading the payment of taxes. But there is no finding that the omission was from mistake, or an honest error of judgment; and a man is presumed to intend that which is the natural and necessary result of his actions. But again and chiefly, in these proceedings separate and distinct findings of fact are not essential, certainly not when none are demanded. The order is evidence of what the clerk found to be the facts. He may and must, it is true, file in his office a statement of the facts, or the evidence, on which he has made the correction; but it may be either the facts, or the evidence. Here he filed a statement of the evidence, and also of the facts he found therefrom. But as the latter was unnecessary, there is no error if it be incomplete. We can regard simply the evidence and the order. And when he charges the costs against Ross, it is equivalent to or rather implies a finding that Ross made an untrue return to evade the payment of taxes.

Again, it is said that the conferring of judicial powers upon the county clerk is in conflict with §§ 1 and 11 of article 3

of the constitution. The point in the counsel's mind seems to be, that as a vacancy in a judicial office is, according to the constitution, to be filled by appointment of the governor, while a vacancy in the county clerk's office is according to the statute filled by appointment of the county board, that therefore the county clerk is not a judicial officer, and no judicial functions can be committed to him. If it were conceded that these sections confer judicial powers upon the county clerk, that thereby he becomes *pro tanto* the judge of a court, and holds a judicial office, and that the constitution requires that all vacancies in judicial offices shall be filled by appointment of the governor, and that such provision applies to such an officer, the result, it seems to us, would be, that the statute providing for appointment by the county board would be void as conflicting with the constitution, and not that the grant of powers would be null because the constitutional method of filling vacancies was ignored in the statute. So that, if all be as counsel seem to claim, the result would not be as contended for. We do not wish however to be understood as deciding that the premises are as claimed.

Finally, it is insisted that these provisions of the statute are void, because there is no allowance for a trial by jury. We do not understand that the right of trial by jury, as preserved in the state constitution, entitles a party to a jury except in such cases and proceedings as prior to the constitution gave a right to a jury. As to all matters which prior to constitution were disposed of by summary proceedings, the legislature may make similar provision to-day. As to proceedings which (like the one before us) are simply proceedings in assessment, and not to enforce in any way a penalty, either by fine or by double or treble tax, no right to a jury existed prior to the constitution. It would be strange indeed if the state had not the right in a speedy and summary way to complete its assessments; and that is all these proceedings contemplate.

We see no error in the record, and the judgment must be affirmed.

All the Justices concurring.