T. W. SILVEN v. THE BOARD OF COUNTY COMMIS-
SIONERS OF THE COUNTY OF OSAGE.

No. 15,537.    (92 Pac. 604.)

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW — *Delegation of Powers* — *Assessment of Taxes* — *Appeal to the District Court.* The assessment of property for purposes of taxation is not a judicial function, and chapter 3 of the Laws of 1905, providing for an appeal from the county board of equalization to the district court, is unconstitutional and void.

Error from Osage district court; ROBERT C. HEIZER, judge. Opinion filed November 9, 1907. Affirmed.

*J. E. Jones, William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*A. B. Crum,* county attorney, and *McLaughlin & Messerley,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: T. W. Silven, an owner of taxable property in Osage county, feeling aggrieved with the valuation placed upon it by the assessor, appealed to the board of equalization for a reduction, but the application was denied. From this decision he attempted to appeal to the district court. There a motion was made to dismiss the appeal, for the reason that the court had no jurisdiction of the subject-matter and was without authority to entertain the appeal. The

district court dismissed the appeal, and error is predicated on that ruling.

The plaintiff bases his claim of right to an appeal upon a recent statute, which provides:

"SECTION 1. Any person owning real estate in the state of Kansas, deeming himself aggrieved by any decision of the county board of equalization relative to the taxable valuation of his real estate, shall have, within ten days from and after the decision of the said board, the right to appeal therefrom to the district court of the county in which the real estate in question is situated.

"SEC. 2. All appeals provided for by section 1 of this act shall be governed by the law providing for appeals from judgments of justices of the peace to the district court." (Laws 1905, ch. 3.)

The trial court held that this act attempts to make the district courts of the state share in the exercise of the taxing power and to confer upon those tribunals legislative and administrative functions with which they cannot be constitutionally vested. If the act were held to be valid it would operate to transfer to the courts a large part in the valuation of property for purposes of taxation, and in practical effect make them assessors. By the terms of the act any one dissatisfied with the valuation of his property may apply to the board of equalization to reduce the valuation and to reassess his property, and, if an unfavorable decision be made, take an appeal to the district court. The act provides that such an appeal shall be governed by the law relative to appeals from judgments of justices of the peace. Under that law the appeal vacates the judgment or decision and there is a trial *de novo* in the appellate court. The effect of such an appeal would be to set aside the assessment made, and would devolve upon the court the duty, not only of revising or correcting the assessment, but also of making a new and independent one, and thus substitute the judgment of the court, as to valuation, for that of the assessors. Since any aggrieved party may appeal, all

owners of property may likewise avail themselves of
the right; and thus the courts would be transformed
into boards of assessment, with the responsibility of
fixing the ultimate valuation of property for purposes
of taxation. This is wholly impracticable, and, ac-
cording to a number of decisions of this court, in
contravention of the limitations of the constitution.
Under the constitution a court may only be vested with
judicial power. The power of taxation is a legislative
function. It is the province of the legislature to de-
termine the subject and extent of taxation and to pro-
vide the means and agencies for enforcing it. In the
absence of constitutional restrictions the taxing power
of the legislature is supreme, and complete, and nothing
in that instrument justifies a division of that power
with the judiciary.

Of course, if the legislature should violate a con-
stitutional limitation in the enactment of a tax law the
judicial power of the courts might be invoked to de-
termine its validity and prevent its enforcement. And
if the officers or agencies provided by the legislature
for administering the tax laws were not proceeding in
a legal manner their hands might be stayed by appro-
priate proceedings in the courts, and it is doubtless
competent for the legislature to provide that any in-
validity in tax proceedings shall be tested or any con-
troversy arising from the unlawful actions of officers in
administering the tax laws shall be tried in the courts
in either original or appellate proceedings. These
matters, however, are purely judicial in their nature,
and are wholly apart from the taxing power vested
in another department of the government, which
cannot be delegated to, or exercised by, the courts.
An assessor appointed under the law to place a valu-
ation on property for purposes of taxation is an ad-
ministrative officer, and, while his act in assessing
property is administrative, it is in fact an incident to
the legislative power of taxation. It is true that the

44—76 KAN.

valuation of property involves judgment and discretion, but not every act requiring judgment and discretion is judicial in its nature, and the court has consistently held from the early case of *Auditor of State v. A. T. & S. F. Railroad Co.,* 6 Kan. 500, 7 Am. Rep. 575, down to the case of *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, that the matter of assessment of property for taxation is not a judicial function. In *Auditor of State v. A. T. & S. F. Railroad Co., supra,* where the right of an appeal to a court from assessment of property by a board of assessors was involved, it was held that "the power to tax is a legislative power, and not in any sense judicial." (Syllabus.) In deciding that the statute giving an appeal was invalid Mr. Chief Justice Kingman said:

"The assessment of the property of the state, being then an incident to the taxing power, which is wholly legislative and not judicial, may well be ascertained by agents appointed under the law; but in no sense under our constitution can such agents be considered judicial officers. It is true that their duties require of them judgment and discretion; but this is also true of most of the duties of ministerial and executive officers, but this does not make them judicial officers, nor constitute them courts, or render their conclusions judicial acts; and not being such, it follows from what has been heretofore said that there can be no appeal from the decision of such agents to this court." (Page 507.)

In *K. P. Rly. Co. v. Comm'rs of Ellis Co.,* 19 Kan. 584, an attack was made upon the decision of the board of equalization in raising an assessment of the property of the railway company. The increase was made by the board without the swearing of witnesses or the taking of any proof whatever. It was contended that the functions of the board on revising the assessment were judicial in their nature and they could not change the assessment upon their own knowledge or without the submission of testimony by the parties in a judicial way. It was there decided:

"The proceedings before the county commissioners

were not judicial, but in assessment. Section 65 of the tax law under which these proceedings were had provides simply for the correction of an assessment. It prescribes notice to the taxpayer as a condition of a valid action; but such notice does not turn the proceeding from one in the nature of an assessment into a judicial inquiry. Indeed, unless the legislature had prescribed notice, it is doubtful whether any were essential. Correcting an assessment is no more of a judicial act than making the assessment originally. True, it involves a determination; but so does almost every political or executive act. But it is not a judicial determination. The most that can be said is that it is *quasi*-judicial. The case of *Auditor of State v. A. T. & S. F. Railroad Co.*, 6 Kan. 500, 7 Am. Rep. 575, is directly in point. There it was held that appeal would not lie from an original assessment to this court, because such assessment was the exercise of a legislative power. The county board, sitting as a board of equalization of real-estate assessments, raises the valuation of some tracts, and lowers that of others. It thus corrects the assessments. But is it then acting in a judicial capacity? Clearly not." (Page 587.)

The character of the board of equalization and the nature of its acts was again before the court in *K. P. Rly. Co. v. Comm'rs of Riley Co.*, 20 Kan. 141. The nature of the power exercised was tested by the kind of proof upon which equalization might be made. It was said:

"Upon what may a board of equalization act? May they act entirely upon the assessments and returns made to them, guided by their personal knowledge, or must they accept the assessment and returns as conclusive unless other and outside testimony is produced? We think they may act entirely upon the assessment and returns made to them, guided by their own knowledge. We do not mean that they are limited to these matters, and that they cannot procure testimony and avail themselves of other means of information. The matter of equalization is committed to their discretion. It is not a judicial proceeding, nor one from which error will lie." (Page 144.)

While the taxing power is essentially a legislative

function, the process of working out the legislative scheme of extending levies and collecting taxes is largely devolved on administrative officers, and much of what is done by them is ordinarily spoken of as an exercise of administrative power. In that way assessment has been designated as an administrative act; but, of course, such an act is always understood to be a mere incident of the legislative power, just as there may be administrative acts in the execution of the other great governmental powers. So it was said in the recent case of *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case." (Page 636.)

While holding that the matter of assessment could not be transferred to the courts, Mr. Justice Burch called attention to judicial functions that might arise out of the exercise of the taxing power. He remarked:

"But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity." (Page 636.)

As has been seen, the act under which the proposed appeal was taken would operate to vacate the assessments made by the officers charged with that duty and give the courts authority to make new assessments, thus substituting their judgment of values for those

of the assessors and boards of equalization. The cited cases make it clear that such functions cannot be vested in the courts and that the act imposing them is invalid.

The judgment of the district court is therefore affirmed.