No. 44,134

Walter Boehm, *Appellant*, v. The Board of County Commissioners of the County of Reno, State of Kansas: John C. Oswald, as Commissioner of the Second Commissioner District; Guy L. Ankerholz, as Commissioner of the First Commissioner District; and Jack Maloney, as Commissioner of the Third Commissioner District; all of and for Reno County, Kansas, *Appellees.*

(400 P. 2d 739)

Opinion filed April 10, 1965.

*E. Dexter Galloway,* of Hutchinson, argued the cause and was on the briefs for the appellant.

*Wendell S. Holmes,* of Hutchinson, argued the cause, and *Michael E. Chalfant* and *Richard J. Rome,* both of Hutchinson, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a judgment denying injunctive relief in an action by a taxpayer seeking to enjoin the acquisition of land for courthouse and jail purposes.

On June 21, 1963, the Board of County Commissioners of Reno County adopted a resolution under the provisions of K. S. A. 19-1569 levying a tax "for the purpose of creating and providing a special fund to be used in acquiring a site for, and the building, equipping and furnishing of a jail . . ." On the same date the Board adopted a resolution under the provisions of K. S. A. 19-1590 for the issuance of bonds "for the purpose of acquiring sites for the erection of necessary additions to the existing courthouse and buildings and the equipping and maintenance of such additions and buildings; and for the further purpose of making necessary capital improvements and alterations to the existing courthouse. . . ." Both resolutions were published for three consecutive weeks and no petitions in opposition were filed. Following publication of the resolutions the Board purchased four parcels of land under the provisions of K. S. A. 19-1569 and contracted for the purchase of additional land which was to be paid for from bonds issued under the provisions of K. S. A. 19-1590.

On June 16, 1964, plaintiff filed an action in the Reno County District Court asking that all of the purchase contracts be declared illegal and void; that the Board be enjoined from paying out funds on the contracts; that the Board be enjoined from levying any tax or issuing any bonds for payments under the contracts, and from carrying on further negotiations for the purchase of property for courthouse and for jail purposes. The case came regularly on for trial to the court on July 27, 1964. After plaintiff had completed the introduction of his evidence defendants moved for a summary judgment on the ground that plaintiff had shown no right to relief; the motion was sustained.

The plaintiff has appealed.

Before taking up the specific questions raised by appellant it will be well to consider a few general principles of law which will apply to all of the contentions.

It should first be understood that the courts have no supervisory power over administrative matters which the legislature has left to the discretion of public bodies. Where there is no constitutional impediment to the action taken or lack of legislative authority, a court can review the discretionary action of a public administrative body only for the purpose of determining whether the action taken is fraudulent or so arbitrary, capricious or unreasonable as to amount to fraud.

In *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1154, we stated at page 359 of the opinion:

"So, here, the duty and discretion placed in the board of review being administrative in character and nonjudicial, the court is not warranted in substituting its judgment for that of the board. If the board should act fraudulently, or so arbitrarily and capriciously as to amount to fraud, a resort to the courts may be had, and as against such action an aggrieved party may have redress. (*Silven v. Osage County,* 76 Kan. 687, 92 Pac. 604.) In *The State, ex rel., v. Mohler,* 98 Kan. 465, 158 Pac. 408, cited by plaintiff, this doctrine was recognized, and speaking of the acts of administrative boards it was said:

" 'The exercise of such power is merely the exercise of administrative discretion. If this power is abused, the courts are open to the aggrieved party, if not by some statutory review, then by the extraordinary and prerogative remedies of injunction or mandamus.' (p. 472.)

"There have been repeated holdings that the decisions of a board or other tribunal upon which the legislature has conferred the exercise of nonjudicial power, if made in good faith, are not open to judicial control or review, and that in such a case a court may go no farther than to prevent the abuse of the power so vested. In respect to the powers conferred on a municipal body it has been said that 'the courts have no supervisory power over the policy of municipal legislation. They can only interfere to curb action which is *ultra vires* because of some constitutional impediment or lack of antecedent legislative authority, or because the action is so arbitrary, capricious, unreasonable and subversive of private right as to indicate a clear abuse rather than a *bona fide* exercise of power.' . . ."

The Board of County Commissioners is vested with discretion to determine the necessity and the amount of land to be acquired for a given project. In *Breedlove v. Wyandotte County Comm'rs.,* 127 Kan. 754, 275 Pac. 379, we stated beginning at page 756 of the opinion:

". . . In a case where commissioners acquired land by condemnation for the purpose of widening and altering a road so as to care for a deep ditch or waterway in order to eliminate dangerous places in the road, the plaintiffs insisted that the proposed improvement was unnecessary and illegal, that the purpose could be accomplished without appropriating any of plaintiff's land, and he sought to stop the improvement by injunction. The court held that the law gave the board authority to make the alteration and improvement, that it was vested with discretion in the matter, and where they acted after consulting such expert advice as was available and exercised their best judgment and discretion, there could be no interference with their action where it was free from fraud, abuse of discretion or other gross impropriety. The conclusion was that the plaintiffs were not entitled to maintain injunction. (*Balliet v. Clay County,* 115 Kan. 99, 222 Pac. 132.) Here there being no proof of fraud or gross impropriety on the part of the commissioners, it must be assumed they acted in good faith, and their action if within legislative authority cannot be stayed or prevented by injunction. See, also, *Shanks v.*

*Pearson,* 66 Kan. 168, 71 Pac. 252; *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1154; *Evans v. Edelbrock,* 106 Kan. 233, 187 Pac. 664; *Smith v. Reno County Comm'rs,* 121 Kan. 444, 247 Pac. 1046."

The burden of proof is on the complaining party to establish arbitrary and capricious conduct, and mere inferences of innuendo is not sufficient to overcome the burden. (*Kindley v. Rogers,* 85 Kan. 645, 118 Pac. 1037.)

Appellant first contends in his statement of points relied upon that:

"G. S. 1961, [K. S. A.] 19-1569, does not authorize these Defendants to buy more ground than they can possibly use for a county jail, and with the avowed intention of acquiring a site and equipping a jail for use by the City of Hutchinson, Kansas."

The resolution in connection with K. S. A. 19-1569 reads in part:

"WHEREAS, Pursuant to the provision of G. S. 1961, Supp. [K. S. A.] 19-1569, any County may make an annual tax levy of not to exceed one (1) mill upon all the tangible property of the County for the purpose of creating and providing a special fund to be used in acquiring a site for, and the building, equipping and furnishing of a jail.

"WHEREAS, said Board of County Commissioners of Reno County, Kansas, have determined the total amount necessary to be raised for the above described purpose is $129,000 and does not exceed two and one-half per cent (2½%) of all assessed tangible valuation of Reno County, Kansas.

"WHEREAS, said Board of County Commissioners, Reno County, Kansas, recognizes the present Reno County Jail is wholly lacking in the facilities for women inmates, juveniles, and persons of mental disorders; that remodeling of the present jail is impractical and does not provide a solution to the above described problem; that a new and modern jail, properly equipped to handle all prisoners, including women inmates, juveniles, and persons of mental disorders, and located within a close proximity to the present Courthouse, offers the only practical and proper solution to the above described problem."

There is nothing in the resolution to indicate that the Board of County Commissioners intended to acquire a site and equip a jail for use by the city of Hutchinson and the record is void of any evidence to establish such contention.

The testimony of the architect-engineer, Arbuckle, disclosed the need for an additional 60,000 square feet of ground for courthouse purposes, exclusive of space for expansion of jail facilities, to meet the needs of the county during the next twenty years. The Board has purchased and contracted to purchase 76,230 square feet of land to meet all needs.

There is nothing in the record to indicate any abuse of discretion in the determination of the amount of land necessary.

The appellant next contends that K. S. A. 19-1590 only authorizes the appellees to acquire sites for necessary additions to existing buildings. They argue that since land is being acquired across the alley from the existing structures that buildings constructed thereon will not be attached to existing structures. It might be suggested that if the appellees acquire the entire block for courthouse and jail facilities, as appellant suggests they intend, then the elimination of the alley will present no problem. However, we believe the appellant places too narrow a construction on the statute.

The resolution which follows the provisions of K. S. A. 19-1590 provides in part:

"WHEREAS, pursuant to the provisions of G. S. 1961, Supp., [K. S. A.] 19-1590, any County, having a population of not less than fifty thousand (50,000) and not more than eighty thousand (80,000), when it is deemed advisable, may issue bonds of the County in a total amount of not to exceed ½ of one percent (½%) of the assessed taxable tangible valuation of the County for the purpose of acquiring sites for the erection of necessary additions to the existing courthouse and buildings, and the equipping and maintenance of such additions and buildings; and for the further purpose of making necessary capital improvements and alterations to the existing courthouse.

"WHEREAS, the population of Reno County, as of June 20, 1963, is 60,725.

"WHEREAS, the Board of County Commissioners, Reno County, recognize that the crowded and scattered conditions of various departments of Reno County, including, but not limited to the Welfare Department, Reno County Extension Council, Reno County Probate Court, will within the forseeable future require the acquisitions of sites for the erection of necessary additions to the existing courthouse, for buildings and equipment and maintenance of such additions and buildings, and for the further purpose of making necessary capital improvements to the existing courthouse."

The phrase "for the purpose of acquiring for the erection of necessary additions to the existing courthouse and buildings," is not to be interpreted to mean that additions must be attached to existing buildings.

New buildings erected on a courthouse site but not attached to the main courthouse or jail are additions thereto. A new modern jail, properly equipped to handle all prisoners, including women inmates, juveniles and persons of mental disorders, as covered by and provided for in the resolution, may well require separate buildings, but such separate building would be an addition to the courthouse and jail.

Appellant last contends:

"If this Court chooses to hold the Trial Court was right in finding:

"(1) That 19-1569 allows these Defendants to acquire land for purposes of a city-county jail; and

"(2) That 19-1590 allows the Defendants to acquire buildings without any showing of necessity, and no showing that additions are necessary; then this Plaintiff respectfully submits that the Statutes, as so construed, are unconstitutional, as being so vague and indefinite as to not be susceptible of any definite notice to the taxpayers of the contemplated action."

Appellant's suggestions are without merit. Appellees make no such claims as are stated by appellant and there is no evidence to support a finding of such intentions on the part of appellees.

After a careful consideration of the record and all of the contentions of appellees no error is found which would justify the granting of a new trial or a reversal of the judgment.

The judgment is affirmed.

APPROVED BY THE COURT

FONTRON, J., not participating.